Maria W. Tam, ESQ. (CSB#: 164996)
Law Office of Maria W. Tam
9650 Telstar Avenue, Unit A #825
El Monte, CA 91731
Tel: (626) 281-9353
Email: Tamlawoffice@gmail.com


Attorney for Debtor
Zhihui Zhuang


# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION


| | |
|---|---|
| In re: | CHAPTER 7 |
| | |
| | CASE NO.: 2:25-bk-21019 BR |
| | |
| ZHIHUI HUANG | |
| | DEBTOR ZHIHUI ZHUANG'S |
| | NOTICE OF MOTION AND MOTION |
| | TO EXTEND DEADLINE TO FILE |
| | MOTION FOR PROTECTIVE ORDER |
| Debtor. | |
| | |
| | |
| | Date: TBD |
| | Time: TBD |
| | Crtrm: 1668 |

**TO THE HONORABLE BARRY RUSSELL, CHAPTER 7 TRUSTEE AND ALL INTERESTED PARTIES:**

NOTICE IS HEREBY GIVEN that Debtor Zhihui Zhuang hereby moves for an Order extending time for the Debtor Zhihui Zhuang to file Motion for Protective Order based on Federal Rules of Bankruptcy Procedure Rule 9006(b)(1) due to excusable neglect. This motion is set to be heard on the above stated date and time. Debtor Zhihui Zhuang's motion is based on the following grounds:

## GROUNDS FOR REQUEST

**1.      Debtor Zhihui Zhuang is in Substantial Compliance with the Production of Documents requested in the 2004 Application**

Debtor Zhihui Zhuang (hereinafter "Debtor Zhihui") had tried his very best and in good faith, provided numerous documents (See Exhibit 6) requested by the creditors Weijie Xu, Zhaobangji Small Loan Co., Ltd and Winson Credit.  These three creditors will be collectively referred to as "Xu Group"). Debtor Zhihui Zhuang is in substantial compliance with the document requests stated in the Application for 2004 Examination of the Xu Group. Debtor Zhihui Zhuang provided all the documents that he can obtain within the last four years in response to the fifty-four (54) requests listed in Xu Group 2004 Application for Examination. Not only did Debtor Zhihui Zhuang produced documents relating to himself.  He had also produced documents relating to his wife who is totally unrelated to any debts owed to the Xu Group.  All of debtor's debts were incurred prior to marriage. Debtor was married in August 2023 and all these debts happened before marriage.

The documents that were not produced are beyond a reasonable discovery period. Xu Group are asking for documents for over nine years.  By requesting a nine year period of documents, Xu Group is using an oppressive harassing strategy to win their case. Additionally, the Xu Group wants debtor to produce his drivers license, social security card, green card application, visas, passport, China household card, email accounts, ICloud accounts, WeChat accounts, and all online accounts ... all of which really has no bearing on discovering or adminstering assets.

**2.     Debtor had provided the Stipulation for the Disputed Items to the Xu Group and were waiting for the Xu Group to key in their objections in the Stipulation back around April 24 to May 1, 2026.**

Debtor Zhihui Zhuang's counsel (attorney Maria W. Tam) had provided Zhihui Zhuang's Stipulation for the Disputed Items to the counsel of the Xu Group back on May 1, 2026.  (See Exhibit 7, 8, 9 and 10).  Debtor's counsel was waiting for counsel for the Xu Group to provide their input in the Proposed Stipulation of debtor Zhihui Zhuang.

**3.     In mid July, 2026, Debtor Zhihui Zhuang's counsel requested for 60 days continuance for further production and also for the parties to reduce and finalize the number of disputed items to be presented to the Court for the Motion for**

- 2 -

**Protective Order**.

In July, Debtor Zhihui Zhuang's counsel had obtained some more documents and were redacting the attorney-client privileged documents and had requested for a 60 days continuance from the counsel for the Xu Group. Debtor's counsel also offered to extend all deadlines for the Xu Group for 60 days to ensure that the Xu Group has abundant time to review all the documents.

Most important of all, Debtor's counsel want to work out with the Xu Group so as to reduce the number of request that needs to be determined by the Court for the Motion for Protective Order. The Xu Group, without any attempt to review or work out the disputed items, said that they are not satisfied with the documents produced and that Debtor Zhihui Zhuang's responses for all of the requests (54 requests in total are listed in the 2004 Application) are not in compliance.  There are 54 requests on the 2004 Application for Examination against debtor Zhihui Zhuang, many of which, the debtor clearly answered 'No documents relating to the request'.  Yet, the Xu Group just blindly and wifully said they are NOT satisfied with the response and said all 54 items are in dispute!.

**4.      The Extension of the Deadline will not have any prejudicial effect on the Xu Group of Creditors**

The granting of this motion will not have any prejudicial effect on the Xu Group. Debtor Zhihui Zhuang had voluntarily stipulated to extend the deadline for the Xu Group to file non-dischargeability complaint a number of times.  The current deadline is September 16, 2026. Debtor Zhihui Zhuang had offered to extend the current deadline for filing non-dischargeability complaint for another 60 days (or longer if desired by the Xu Group) to ensure that the Xu Group will have abundant time to prepare their complaint.

**RELIEF REQUESTED:**

Debtor Zhihui Zhuang prays that the Court will grant this Motion to Extend the Deadline to file the Motion for Protective Order.  Debtor Zhihui Zhuang can file the Motion for Protective Order but has not been able to obtain any input from the Xu Group for the Stipulation of

Disputed Items.  Upon the entry of the Order granting the extension, Debtor Zhihui Zhuang will re-send the Stipulation to the Xu Group and provide them with seven (7) days to include their input into the Stipulation of Disputed Items.  Currently, the Xu Group will not cooperate and refuse to put their objections and grounds in the Stipulations. Thus, Debtor respectfully prays for an extension of 35 days from the entry of the Order extending the deadline to file the Motion for Protective Order so that this case can be adjudicated based on the merits of the case.

**OPPOSITION:**

NOTICE IS GIVEN that pursuant to Local Bankruptcy Rule 9013(f)(1), each interested party opposing or responding to this motion must file and serve the written responses on the moving party and the United States trustee not later than fourteen (14) days before the date designated for hearing.

Respectfully submitted,

Law Office of Maria W. Tam

/s/ Maria W. Tam

Dated: August 10, 2026

_____
Maria W. Tam
Attorney for debtor Zhihui Zhuang

**I.    FACTUAL BACKGROUND**

Debtor Zhihui Zhuang (hereinafter " Debtor Zhihui") was a resident of China.  Debtor Zhihui's father is Chenshi Zhuang.  Debtor's parents Chenshi Zhuang and Qufang Zhuang had also filed for Chapter 7 bankruptcy (case#: 2:25-bk-210-16 BR).

Between 2000 to 2020, debtor's father - Chenshi Zhuang managed a number of real estate development companies in China.  The companies purchased land and built residential, commercial real properties, office building, shopping centers on the land.  Chenshi used to manage the following companies (hereinafter collectively referred to as "the Companies"):

(1)    GuangYao Decoration Design Engineering ShenZhen China

(2)    ShiJiFengYuan Investment Development Co. ShenZhen China

(3)    ShiJiXin Yuan Investment Development Co. Qing Yuan China

(4)    FuSiYuan Real Estate Development Co. ShenZhen China

(5)    Jian Xin Feng Yuan Industrial Co., Ltd.

The title of the real properties were held by the Companies.  The real properties were used as collateral to secure the loans from banks and private lenders to fund the development of the residential and commercial properties.  When the loans were borrowed, the real properties were worth a lot of money and the banks and private lenders were fully secured by the value of the real properties. Additionally, some of the banks and private lenders requested a personal guarantee from Chenshi Zhuang and from debtor Zhihui Zhuang.  In China, it is very common to require all the family members to provide personal guarantee for business loans.

The Companies developed vacant land and built many apartment units, commercial real properties and shopping centers in China.  The real properties were sold and the funds were used to build the next project.

Debtor Zhihui does not hold any positions in the Companies.  Debtor Zhihui does not have any access to any of the Companies bank accounts.  Zhihui does not sign any checks and have no control over the Companies. Zhihui worked as a construction site foreman for one of the companies - FuSiYuan Real Estate Development Co. only.  Debtor's job was to go out to check on the progress of the building of real properties and then report back to management of

FuSiYuan Real Estate Development Co.  Debtor Zhihui does not hold any title nor position in any other companies.

Initially, th China real estate market were doing really well and the Companies made the payments to the banks and lenders.  But around 2021 to 2022, the China banks tighten their lending policy. All of a sudden, banks were not willing to provide mortgage loans to buyers. Banks refused to loan money to the Companies to continue the projects.  The China real estate market totally collapsed. The Companies had multiple projects that were stopped as the China banks refused to continue the bank loans and the buyers do not have money to buy the finished houses and commercial properties. Therefore, the Companies cannot meet the loan payments.  All the apartments and commercial properties owned by the Companies were foreclosed by the creditors in China through numerous China court judgments. Contrary to the smearing by the Xu Group, the companies managed by the debtor's father - Chenshi Zhuang are legitimate companies that developed many residential and commercial real estates.

Debtor Zhihui did not control nor work for the Companies.  The only company he worked for was FuSiYuan Real Estate Development.  He worked there as a construction site foreman. But when the market collapsed, he was sued for the personal guarantee.  Debtor wants to point out that the Companies owned many real properties that were foreclosed by the China Courts. But when the China market real estate collapsed, the real properties lost its value and were not sufficient to cover all the loans.

Attached hereto are:

Exhibit 1 - Guangfa Bank Judgment and Execution Order (with English Translation).  On page 6, shows that the China Court is foreclosing two hundred ninety seven (297) real properties to pay the creditors.

Exhibit 2 - Receipt issued by Creditor Weijie Xu for the First Loan.  Weijie Xu acknowledges repayment of 40 million RMB loan. This is the first loan made by Weijie Xu to the Companies.  It was fully paid off with interests to creditor Weijie Xu.

Exhibit 3 -  is a copy of Weijie Xu China court judgment with translation.  On page 4, it shows

- 6 -

that the China Court had foreclosed on numerous real properties as partial satisfaction of Weijie Xu debt.

Exhibit 4 - Yuanhua ping Judgment (page 7). The red circle shows that numerous properties were foreclosed by the China Courts.

Exhibit 5 - is a copy of the Industrial Bank judgment, on page 1, the red circle showed that the China Court has foreclosed on numerous real properties to pay creditor Industrial Bank.

For all the China lawsuits where Debtor Zhihui was named as a defendant, he was included only because of the personal guarantee.  All the Companies were shutdown by the China courts around 2022. All the Companies bank accounts were seized by the China Courts.  All the real properties were foreclosed by the China Courts. All of Debtor Zhihui's personal bank accounts and assets were seized by the creditors through the China court judgments.  After losing everything, Debtor Zhihui left China and traveled to USA around June 2022.  He met Ms. Yiwei Lyu through a friend, fell in love and married Ms. Yiwei Lyu in August 2023.  Through his newly-wedded wife, debtor Zhihui obtained permanent residence in USA.

Debtor prays that the Court would understand that he was sued for the loans owed by the Companies only because the Chinese banks and lenders required debtor (as son of Chenshi Zhuang) to provide personal guarantee.  The Chinese banks and lenders loaned money to the Companies based on the real estates owned by the Companies. The banks and lenders loan were secured by the real properties of the Companies.  The loans were not made because of the Debtor Zhihui.  He was dragged in as it is common in China to make the family members to personally guarantee the company loans.

Debtor Zhihui wants to point out that he has never met with creditors Weiji Xu, Zhaobangji Small Loan Company, Winson Credit ("the Xu Group").  Debtor Zhihui has never communicated with the Xu Group.  Debtor Zhihui do not control the Companies.  He has made no representations to the Xu Group. There is absolutely no grounds to allege fraud against the debtor Zhihui.

The important points are:

1.    Debtor Zhihui did not manage the Companies.  He was included in the China Court Judgments only because of the personal guarantee.

2.    When all the creditors sued in China, there was NEVER any claim of fraud or misconduct against the debtor Zhihui Zhuang or any other defendants in China. Debtor Zhihui was included in the China judgments because he was required by the China bank and lenders to sign the personal guarantee for some of the loans.

3.    Weijie Xu and Zhaobanji Small Loan Co. Ltd have sued and obtained a China Court judgment.  The Xu Group NEVER allege fraud or any misconduct when they sued in China. Weijie Xu and Shenzhen Zhaobangji Small Loan had converted their China Court judgment into a Los Angeles Federal Court Judgment. Again, Weijie Xu and Zhaobangji Small Loan did not find any fraud and did not allege any fraud in the two LA federal court cases against debtor Zhihui or debtor's father Chenshi Zhuang.

4.    The Xu Group keep smearing debtor and wrongly accused debtor of "absconding" funds.  The Xu Group has not provided one single piece of evidence to substantiate their accusations.  Debtor Zhihui has very limited involvement in the Companies.  But when the Companies failed, he was dragged in and sued for the personal guarantee.  The China courts have seized all of debtor's personal bank accounts and all assets to pay for the China debts and judgments.

## II.    PROCEDURAL BACKGROUND

Creditors Weijie Xu and Zhaobangji Small Loan Co., Ltd obtained a China Court Judgment against debtor Zhihui Zhuang for breach of personal guarantee for the loans made to the Companies. There were a number of defendants in the China Court case.

Around 2025, creditors Weijie Xu and Zhaobangji Small Loan Co., Ltd filed a petition in LA Federal Court and converted their China Court Judgments into a USA court Judgment. The China Court Judgment was for money owed.  There is no allegation of fraud or any misconduct.

When creditors Weijie Xu and Zhaobangji Small Loan Co., Ltd petitioned to convert their China Court Judgments into LA Federal Court Judgments, these two creditors did not sue for fraud or allege any misconducts.

On or about December 8, 2025, debtor Zhihui Zhuang filed for Chapter 7 bankruptcy. Since then the attorney for Weijie Xu and Zhaobangji Small Loan have obtained a number of extensions to extend the deadline to file for nondishargeability actions against the Debtor Zhihui. With the exception of the first request for extension, Debtor Zhihui (through his counsel Maria W. Tam) has voluntarily agreed to all the Stipulations to Extend the deadline to allow attorney Minyao Wang to file a nondischargeability action for the creditors Weijie Xu and Shenzhen Xiaobangji Small Loan. The current deadline for Weijie Xu and Zhaobangji Small Loan Co to file non-dischargeability is around September 16, 2026.

Additionally, the Court should note that the Xu Group has filed a number of Emergency Motions, Application for Order Shortening Time and other motions which Debtor really does not have the financial resources and manpower to respond to. Essentially, the Xu Group with their financial power totally overwhelmed the Debtor and gained an unfair advantage against the Debtor.

**(A) The Xu Group Filed Emergency Motion for Application for 2004 Examination**

Creditors Weijie and Zhaobangji Small Loan Co filed an Emergency Motion for Application for 2004 Examination and requested tons of documents over a long period of time (over 9 years long). On April 3, 2026, the Order granting the Emergency Motion (Doc 43) was signed and entered. The Xu Group requested numerous documents over a nine year period and requested that all documents be produced by April 25, 2026 giving the Debtor less than 30 days to search for the documents. The examination of the Debtor and the other witness were set on June 1, 2 and 3.

The dates requested in the Xu Group Emergency Motion truly is not viable. The Order was granted on April 3, 2026. There were 54 requests spanning nine year period. Then based on the LBR 2004, the deadline to file the Motion for Protective Order will be set on May 18, 2026.

It is impossible to fit the motion in without an Emergency Motion or Order Shortening Time.

In spite of this unreasonable schedule, Debtor Zhihui, in good faith, searched and produced voluminous documents trying to comply with the extensive discovery requests.  Debtor provided his documents and also provided documents relating to his wife.  Debtor only got married in August 2023.  Any debts owed by Debtor Zhihui was incurred prior to August 2023.  Yet, Debtor Zhihui's wife was dragged into this case.

See attached Exhibit 6 - this is a brief summary of part of the voluminous documents produced to the Xu Group. There were numerous documents produced including the wife's bank accounts statements.

Debtor does not have access to his China bank accounts any more as he has left China in June 2022.  In China, bank accounts are tied to the owner's individual cell phone number.  Debtor Zhihui left in June 2022 and no longer owns the cell phone number tied to his China bank accounts.  Thus, it is impossible for him to produce any of his China bank accounts statements.  Most important of all, all of debtor's bank accounts and assets have been seized by the China Courts.  See the China Court Judgments and Execution Orders (See Exhibit 1, 3, 4 and 5).

On or about April 24, 2026, Debtor's counsel Maria W. Tam provided the documents together with the Written Response of Zhihui Zhuang objecting to some of the requests to the debtor.  Attached hereto as Exhibit 7 is the email showing that documents were produced and the Debtor Zhihui Zhuang's Written Responses with Objections were emailed to the Xu Group's attorney.  Debtor's counsel Maria W. Tam emailed all the produced documents first and then email "Zhihui Zhuang's Written Objections to the Requests" to opposing attorney. (Exhibit 7 - this exhibit shows documents and objections were emailed on April 24, 2026). Exhibit 8 - is a copy of Zhihui Zhuang's Written Responses to 2004 Request for Production of Documents.

**(B)** **Local Bankruptcy Rule 2004(1)(f) provides the guidelines for Protective Order**

Protective Order.  The party whose examination is requested may file a motion for protective order if grounds exist under FRBP 7026 and F.R.Civ.P. 26(c).  A motion for 16 LBR 2010-1

protective order must be filed and served not less than 14 days before the date of the examination, and set for hearing not less than 2 days before the scheduled examination, unless an order setting hearing on shortened notice is granted by the court pursuant to LBR 9075-1.  The parties may stipulate, or the court may order, that the examination be postponed so that the motion for protective order can be heard on regular notice under LBR 9013-1(d).

According to the Emergency Motion for Application for 2004 Examination, the Xu Group has set the examination dates on June 1, 2 and 3.  So, in accordance with LRB 2004(1)(f), debtor Zhihui Zhuang can file the Motion for Protective Order up to and including May 18, 2026. May 18, 2026 is 14 days before the earliest examination date (June 1, 2 and 3).  Debtor is not late in providing the documents and written responses (with objections).   Documents were produced with certified English Translation.

On April 28, 2026, debtor's counsel Maria W. Tam emailed Xu Group's attorney Minyao Wang to request a meet and confer conference to go over the disputed items (See Exhibit 9). Then on May 1, 2026, debtor's attorney prepared a Stipulation and put in Debtor's objections and emailed the Stipulation to attorney Minyao Wang so that he can key in his response to the Stipulation for Disputed Items (See Exhibit 10).

In the Meet and Confer letter, Attorney Maria Tam pointed out that the discovery period should be limited to four years. :

The major purpose of discovery is to discover and administer assets of the bankruptcy estate.  Trustees (or creditors) may file the following claims of relief:

1.      To recover preferential actions - 11 U.S.C. §547

The statute of limitations for bringing a preference action under 11 U.S.C. §547 is generally two years after the entry of the order for relief (bankruptcy filing date), or one year after the appointment of a trustee if appointed within that initial two-year period.  The actual "look-back" period for preferential transfers is 90 days for general creditors or one year for insiders.  Thus to ask for documents going back nine years ago serves no purpose for preferential actions.

2.      To recover fraudulent conveyance - The statute of limitations for 11 U.S.C. §548

- 11 -

(fraudulent transfers) is a two-year "look-back" period. Trustees or debtors-in-possession can avoid fraudulent transfers made within two years before the bankruptcy petition filing.

3.	Strong Arm Clause - 11 USC §544

11 USC §544(b) allows trustees to use California State fraudulent transfer laws to look back four years for fraudulent transfers.

So, for all the causes actions that can be brought to recover assets, the maximum is four years.  But in the 2004 Request for Production, the Xu Group is asking for a production of documents going back for nine years.  It is impossible for the debtor to comply with such a long period of production of documents.

Secondly, the Xu Group demanded personal documents totally unrelated to the discovery or administering of assets.  The Xu Group wants each debtor to produce his drivers license, social security card, green card application, visas, passports, Apple Icloud account, WECHAT account, email account, all online accounts (See Exhibit 10, Request No. 37, 38, 41, 42) and many other requests that invade on personal privacy. Many of these requests were propounded for the sole purpose of harassing and oppressing debtor Zhihui Zhuang.

On or about May 4, 2026, Attorney Minyao Wang and attorney Maria W. Tam had a Zoom conference and went over the 54 requests propounded by the Xu Group against the debtor Zhihui Zhuang in the 2004 Applications.  The attorneys went through each request to see if the parties can reduce the number of disputed requests to be presented to the Court for the Motion for Protective Order.  For a number of requests, debtor Zhihui just answer without any objections. The following are some of the Requests and Responses where debtor did not have any objections. Debtor did not object to Request No. 6, 7, 12, 13, 15, 21, 22, 23, 28, 28, 29, 30, 31 and 26  and just answer the requests.

(See Exhibit 10).

During the May Zoom conference, attorney Minyao Wang indicated that due to the huge volume of the documents produced, he needed more time to review them.  Additionally, attorney Minyao Wang indicated that he would talk to his client to see if they can agree that there is full compliance with some of the requests. For attorney Maria W. Tam, she has a jury trial set in mid

- 12 -

July and would need time to prepare for her other trial.  The parties therefore agreed that the all dates will be pushed back.  Parties agreed that the Xu Group will have up to and including September 16, 2026 to file the non-dischargeability complaint against Debtor.

Thereafter between May 13 to May 23, 2026, Maria W. Tam was out of the country for 10 days as her 89 year old mother was sick. In July, 2026, attorney Maria Tam has to prepare for a state court jury trial.  Additionally, the Xu Group wanted to see all of the attorney bills of attorney Michael Israel.  Attorney Michael Israel represented Debtor Zhihui Zhuang in the two federal court case filed by Weijie Xu and Zhaobangji Small Loan.  As the attorney bills may involve attorney client privileged communication between Debtor and his federal court case attorney (Michael Israel), attorney Maria W. Tam was forced to go through all of Michael Israel's attorney bills to redact the attorney-client priviledged communications. Furthermore, the Xu Group demanded the invoice for the China translation service, credit reports and some other documents.

Debtor Zhihui Zhuang had worked really hard attempting to satisfy the requests of the Xu Group. Debtor Zhihui Zhuang is trying to reduce the number of the requests to be determined by the Court for the Motion for Protective Order.

In July, Attorney Maria Tam asked attorney Minyao Wang for a 60 day extension for the filing of the Motion for Protective Order.  Attorney Tam also offered to extend all the deadlines by 60 days for the Xu Group.

As mentioned above, during the May Zoom Conference, attorney Minyao Wang said that he will discuss with his client and he probably will agree that some of the requests are in not in dispute. So, during the July phone conference, Attorney Tam followed up with attorney Minyao Wang and asked him 'out of the 54 requests for debtor Zhihui Zhuang, which one does the Xu Group considered as disputed?'.  Without reviewing the lists, attorney Minyao Wang just said that his client thinks all 54 items are in dispute and will not agree that there is any compliance with the responses. This is truly bad faith. A careful review of Exhibit 10 shows that debtor responded to many of the requests without any objections.  Frankly, even for the once that debtor objected to, debtor still provide all the information to the requests.

The following are just some of the requests where the debtor Zhihui has responded to

without any objections.  Yet, attorney Minyao Wang still says that they are not satisfied with the

responses and considered all of the 54 responses as inadequate.

See Exhibit 10:

**REQUEST FOR PRODUCTION NO. 6:**
Documents sufficient to show the aggregate value of all personal property owned by You anywhere in the world, or any trust in which You are or were a settlor or beneficiary, excluding personal property items with a value less than US $10,000.00.
**RESPONSE**
Respondent is not a settlor or beneficiary of any trust.  Respondents does not own personal property worth more than $10,000.

**REQUEST FOR PRODUCTION NO. 7:**
Documents sufficient to identify any assets You own or owned with a value of at least US $10,000.00 anywhere in the world, including, but not limited to, vehicles, boats, airplanes, and jewelry.
**RESPONSE**
Respondent does not own any vehicles, boats, airplanes or jewelry more than $10,000

**REQUEST FOR PRODUCTION NO. 12:**
Documents sufficient to show any amounts, monies or other property exceeding US $10,000.00 owed to You by any person, regardless of when the payment obligation arises, including any accounts receivable, loans, security deposits, prepayments, refunds (including tax refunds) or other amounts.
**RESPONSE**
Respondents does not have any accounts receivables.  No one owes Respondent any money.  No tax refund from the government.

**REQUEST FOR PRODUCTION NO. 13:**
Copies of any judgments rendered in Your favor, whether individually, jointly or in Your name as trustee, guardian, or custodian for another, or in favor of a trust in which You were a beneficiary, which are currently unsatisfied.
**RESPONSE**
Respondent does not have any judgments that show any one (or any entities) owing Respondent any money.

**REQUEST FOR PRODUCTION NO. 15:**
Documents sufficient to show any settlements obtained in Your favor, whether directly or indirectly, individually, jointly, or in Your name as trustee, guardian, custodian for another, or in favor of a trust in which You are or were a beneficiary, under which there remains any unperformed monetary obligation by any party thereto.
**RESPONSE**
Respondents is not aware of any settlements. Respondent is not the beneficiary of any trust.

**REQUEST FOR PRODUCTION NO. 21:**
All Documents and Communications concerning the Santa Anita Sale, including, but not

- 14 -

limited to, the distribution of the proceeds of the sale from the Santa Anita Sale.
**RESPONSE**
Respondent does not have any documents concerning the Santa Anita Sale.  Respondent does not have any documents concerning the distribution of the proceeds of the sale from the Sant Anita Sale.

**REQUEST FOR PRODUCTION NO. 22:**
All Documents and Communications concerning the Santa Anita Property, including, but not limited to, the financing of the acquisition of the Santa Anita Property.
**RESPONSE**
Respondent does not hav any documents concerning the financing and acquisition of the Santa Anita Property.

**REQUEST FOR PRODUCTION NO. 23:**
All Documents and Communications concerning Your possession and use of the Santa Anita Property, including, but not limited to, lease agreements, mortgage agreements, and any other documents constituting, confirming, modifying, describing or referring to any right to occupancy or possession You have or had in the Santa Anita Property, including any informal understanding, life estate, or deeded interest, since January 1, 2016.
**RESPONSE**
Respondent does not have any lease agreements, mortgage agreements, life estate or deeded interest relating to the possession and/or use of the Santa Anita Property.

**REQUEST FOR PRODUCTION NO. 27:**
All Documents and Communications concerning the acquisition of the Ramona Property, including, but not limited to, the financing of the acquisition of the Ramona Property.
**RESPONSE**
Respondent does not have any documents and communications concerning the acquisition of the Ramona Property. Respondent does not own the Ramona Property.

**REQUEST FOR PRODUCTION NO. 28:**
All Documents and Communications concerning Your possession and use of the Ramona Property, including, but not limited to, lease agreements, mortgage agreements, and any other documents constituting, confirming, modifying, describing or referring to any right to occupancy or possession You have in the Ramona Property, including any informal understanding, life estate, or deeded interest, since January 1, 2024.
**RESPONSE**
Respondent does not have any lease agreements, mortgage agreements or any other documents regarding living at the Ramona Property.  My older brother (Zhifeng Zhuang) let me live there.

**REQUEST FOR PRODUCTION NO. 29:**
All Documents and Communications concerning payment of any expenses  related to maintenance and operation of the Ramona Property, including, but not limited to, utility payments, since January 1, 2024.
**RESPONSE**
Respondent did not make any payments concerning any expenses of the Ramona Property.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents and Communications concerning all tax payments made concerning the Ramona Property, including, but not limited to, property tax bills and checks or bank statements concerning property tax payments, since January 1, 2024.

**RESPONSE**

Respondent did not pay any real property tax for Ramona Property.

**REQUEST FOR PRODUCTION NO. 31:**

All Documents and Communications concerning any changes, improvements, or renovations to the Ramona Property, including, but not limited to, Documents and Communications concerning architects, designers, landscapers, painters, plumbers, electricians, and carpenters, since January 1, 2021.

**RESPONSE**

Respondent did not pay for any expenses relating to any changes, improvements or renovations to the Ramona Property.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents and Communications concerning the real property located at 2218 Lee Ave, Arcadia, CA 91006-521.

**RESPONSE**

Respondent does not have any documents or communications regarding the real property located at 2218 Lee Ave, Arcadia, CA 91006.

What more does the Xu Group want the debtor Zhihui to say? The above requests and responses are just some of the examples where there is really no disputes but the Xu Group insisted that there is non-compliance. The Xu Group basically refused to work with debtor Zhihui to work out a Proposed Stipulation for Disputed Items for the Motion for Protective Order.

The Court needs to be informed that the Xu Group propounded 54 requests against debtor Zhihui. In the Chenshi Zhuang and Qufang Zhuang bankruptcy case (2:25-bk-21019 BR), there are another 108 requests. So, there is a total of 162 requests and responses (for the two bankruptcy court cases) that the Court has to go through as attorney Minyao Wang said that ALL of the responses by debtor Zhihui and debtors Chenshi and Qufang (in the 2:25-bk-21019 case) are not adequate and are disputed.

Around July 23, 2026, Debtor's counsel Maria Tam finished redacting all the attorney bills and produced the 12 redacted attorney bills of Michael Israel, the retainer agreement of Maria W. Tam for the filing of bankruptcy, the receipts for payment of attorneys fees, two credit reports (Credit Report Bureau Experian and TransUnion) of debtor Zhihui to the Xu Group. (See Exhibit 11 and Exhibit 12).

- 16 -

Then in July, instead of giving any extension or keying in the Xu Group's input into the Proposed Stipulations for Motion for Protective Order,  the Xu Group filed numerous motions and Application for Order Shortening Time to overwhelm the Debtor. The Xu Group did not do any meet and confer prior to the filing of the Motion to Compel and request for Sanctions.

**III.     THE COURT HAS THE AUTHORITY TO ENLARGE THE FILING DEADLINE BASED ON FRBP 9006(b)**

Rule 6(b)(1)(B) of Federal Rules of Civil Procedure made applicable to bankruptcy via FRBP Rule 9006.  FRBP Rule 9006(b)(1)(B) allows the Court to extend the deadline to file Motion for Protective Order upon the showing of excusable neglect.

FRBP 9006(b)(1), in pertinent part, provides:

(1)     [The] court may – at any time and for cause – extend the time to act if:

(B) on motion made after the specified period expires, the failure to act within that period resulted from excusable neglect.

The U.S. Supreme Court ruled that an attorney's mere oversight in failing to file a proof of claim by th Chapter 11 claims bar date constitute excusable neglect. In granting the extended deadline, the court applied a balancing test to the factors in the case. <u>Pioneer Investment Services Co. V. Brunswick Associates Limited Partnership</u>, 507 U.S. 380, 113 S. Ct. 1489, 123 L.Ed. 2d 74, 28 C.B.C.2d 267 (1993).

In <u>Allied Domecq Retailing USA v. Schultz</u> (In re Schultz) , 254 B.R. 149 (B.A.P. 6th Cir. 2000), the court ruled that an attorney's preoccupation with his wife's illness and the need to care for her was held to be excusable neglect for failure to file a timely notice of appeal.

In <u>Jones Truck Lines, Inc. v. Foster's Truck & Equipment Sales</u> (In re Jones Truck Lines, Inc.), 63 F.3d 685(8th Cir. 1995), the court found that the neglect is excusable when an attorney filed an Answer one month late due to the attorney's desire to explore settlement.

In the case at bar, debtor Zhihui's counsel (Maria Tam) and Xu Group's counsel (Minyao Wang) have agreed to extend the deadline for the Xu Group to file non-dischargeability complaint against debtor to September 16, 2026.  The other hearing were also extended to ensure that the

Xu Group will have abundant time to review the documents, to examine the witnesses and to file non-dischargeability complaint.

In May, 2026, Debtor's counsel has to fly out of the county for 10 days as her 89 year old mother was ill. Additionally, Debtor' counsel was scheduled to have a jury trial in mid July.

In July, 2026, Debtor's counsel has contacted counsel for Xu Group in July to ask for a 60 days extension and also offered to continue the non-dischargeability filing date for 60 days to ensure that the Xu Group has abundant time to file any non-dischargeability complaint. Additionally, debtor's counsel was working on the redacting the federal court attorney's bills which contained attorney-client privileged communications between debtor and his federal court attorney.  The Xu Group demanded the invoice for the Chinese Translation Service Company in China.  Around July 23, 2026, Debtor finished redacting all the attorney bills and produced the 12 redacted attorney bills of Michael Israel, the retainer agreement of Maria W. Tam for the filing of bankruptcy, the receipts for payment of attorneys fees, invoice for Chinese Translation Service, two credit reports (Credit Report Bureau Experian and TransUnion) of debtor Zhihui  to the Xu Group.  (See  Exhibit 11 and Exhibit 12).

Instead of granting the extension or keying their input into the Proposed Stipulation for Disputed Items (emailed to attorney Minyao Wang on May 1, 2026), Xu Group's counsel filed numerous motions against Debtor Zhihui. Debtor prays that the Court will allow the Debtor the opportunity to file the Motion for Protective Order so that the Court can determine what is reasonable discovery based on the merits of this case.

**IV.    DEBTOR PRAYS THAT THE COURT WILL EVALUATE THE 2004 REQUESTS BASED ON THE MERITS OF THE CASE**

It is well-established that 2004 Examination cannot be used to harass or oppress the debtors. Bankruptcy Rule 2004 provides that the scope of examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge,"

Rule 2004 affords both debtors and creditors the broad rights of examination of a third-party's records. Cameron v. United States, 231 U.S. 710, 716, 34 S. Ct. 244, 245-46, 58 L. Ed. 448 (1914). Nevertheless, its scope is not limitless. In re Coffee Cupboard, Inc., 128 B.R. 509, 516 (E.D.N.Y. 1991), appellant offers no explanation of the need for the required documents in his cause of action. Examinations under Rule 2004 cannot be used to harass or oppress the party  .; In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 712 (Bankr. S.D.N.Y.1991). Snyder filed a cause of action against Society in Michigan state court. The use of Rule 2004 to further its case in state court constitutes an abuse of Rule 2004. It is well-established that there are limits to the scope of 2004 examination.  It may not be used for "purposes of abuse or harassment" and it "cannot stray into matters which are not relevant to the basic inquiry". In re Mittco, Inc. 44 B.R. 35, 36 (Bankr. E.D. Wis 1984).

Courts will deny a 2004 Examination if the examination is oppressive and burdensome. See In re Vantage Petroleum Corp., 34 B.R. 650, 652 (Bankr. E.D.N.Y. 1983).  The movant should not be allowed to proceed if the disruption or cost to the debtor far outweighs any benefits to the creditor.  See In re Eagle-Pisher Indus. Inc. 169 B.R.130, 134 (Bankr. S.D. Ohio 1984). Courts have also refused to allow discovery under Bankruptcy Rule 2004 when the entity requesting the examination is attempting to benefit in pending nonbankruptcy litigation. See, e.g., Snyder v. Society Bank, 181 B.R. 40, 42 (S.D. Tex. 1994) (the bankruptcy court did not abuse its discretion in denying document production under Rule 2004 where the appellant's primary motivation was to use the requested materials in state court litigation against the examinee), aff'd, 52 F.3d 1067 (5th Cir. 1995).

In the case at bar, Xu Group requested for the production of the drivers license, social security cards, visas, passports, green card application (See Exhibit 10, Request No. 37) to harass and oppress the Debtor.  What is the purpose of requesting the debtor to produce his drivers license or social security card?  The Chapter 7 Trustee has already verified the identity of the debtor Zhihui Zhuang at the first creditor's meeting.  The Xu Group wants to access and review all the email accounts, iCloud accounts, WECHAT accounts, online accounts (See Exhibit 10, Request 41 and 42) of the debtor. This is truly harassing and oppressive. Debtor Zhihui was

- 19 -

dragged into the lawsuits only because he was required to sign the personal guarantee of the loans.  He did not have any communications with the Xu Group when the loans were made or thereafter.  Any loans made by Weijie Xu or Zhaobangji Small Loan were secured by the real properties of the Companies. Essentially, the Xu Group has the financial ability to file Emergency Motion and put in numerous harassing and oppressive requests so that debtor cannot comply with the requests.

## V.    CONCLUSION

Based on the above, debtor Zhihui Zhuang respectfully prays that the Court will grant this Motion to Extend the Deadline to file the Motion for Protective Order so that the case can be adjudicated truly based on the merits of the case.

Law Office of Maria W. Tam

/S/ Maria W. Tam

Dated: August 10, 2026                    _____

Maria W. Tam
Attorney for debtor Zhihui Zhuang

- 20 -